# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00368-CR

**The State of Texas, Appellant**

**v.**

**Brian David Losoya, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
### NO. 2C02-09080, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State appeals from the trial court=s order granting appellee Brian David Losoya=s motion to suppress evidence. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2004). Because we find no error, we affirm the order.

Around 2:00 p.m. on October 28, 2002, Killeen Police Officers Amanda Locklear and Keith Drozd were dispatched to 3407 Victoria Circle, apartment D, in response to an anonymous telephone call reporting Anarcotics activities@ at that address. Drozd testified that the unknown tipster mentioned the names AVino@ and ATerry,@ and also referred to Aa black male@ and Aa fat white boy.@ There was no mention of an Hispanic male or of a red Chevrolet S-10 pickup truck. Both officers testified that the Victoria Circle area was known for drug trafficking.

The officers arrived at the scene a few minutes after being dispatched and parked some distance away from the suspect address. A red Chevrolet S-10 and another vehicle were parked outside the apartment. The officers saw two males, one Hispanic and one black, walk out of the apartment. The men briefly conversed, then noticed the two officers walking toward them. The Hispanic male walked over to the S-10, got in, and drove away. The black male entered the apartment and closed the door. The two officers described the men=s movements as Ahasty@ and Aquick.@ The officers testified that they considered the men=s actions to be suspicious under the circumstances, but acknowledged that they did not witness any apparent narcotics activity.

Drozd radioed the red pickup truck=s description and license plate number. He and Locklear then knocked on the door of the apartment. No one responded, even after the officers identified themselves. As the officers began to return to their patrol vehicles, they heard a radioed report that the red pickup had been spotted nearby on Rancier Street. They drove to the 2900 block of Rancier, where they saw the red pickup being followed by Officer Philip Grey=s patrol car. Drozd testified that he noticed that the pickup did not have a license plate mounted on the front bumper. Instead, the plate was wedged between the dashboard and windshield. Drozd radioed this fact to Grey and instructed him to stop the pickup. At the hearing below, Drozd added that while he could see the license plate in the truck=s window, he could not read it because of the glare of the sun on the windshield.

Losoya was the Hispanic man seen leaving apartment D and the driver of the red Chevrolet S-10. After being stopped, he gave the officers written permission to search the pickup. They found a marihuana Ablunt@ in the glove compartment. Losoya told the officers that the marihuana belonged to him

2

and that he had forgotten it was there. He said that he had gone to the apartment to pick up a video game he had loaned to a person he knew only as AB.@ He testified that he had removed the license plate from the front bumper while working on the pickup and had temporarily wedged it against the windshield.

Based on this evidence, the trial court ruled that the stop of Losoya=s pickup truck was not justified by either a reasonable suspicion of narcotics possession or an observed traffic offense. The State challenges both of these conclusions. Because the relevant facts are not in dispute and the court expressly stated that A[t]his is not a credibility issue as to the police officers,@ we will conduct a de novo review to determine if the court properly applied the law to the facts. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by specific articulable facts that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). A reasonable suspicion means more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). The reasonableness of a detention must be examined in terms of the totality of the circumstances. *Woods*, 956 S.W.2d at 38.

An anonymous tip or telephone call may justify the initiation of an investigation, but will alone rarely establish the level of suspicion required to justify a detention. *Alabama v. White*, 496 U.S. 325, 329 (1990); *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.CAustin 2000, pet. ref=d). Normally, a police officer must have additional facts before the officer may reasonably conclude that the tip is reliable

and an investigatory detention is justified. *Stewart*, 22 S.W.3d at 648. An officer=s prior knowledge and experience, and his corroboration of the details of the tip, may be considered in giving the anonymous tip the weight it deserves. *Id*.

In this cause, the anonymous tip reported Anarcotics activities@ without giving any further details regarding those activities. The tip did not mention Losoya or his pickup truck, either by name or by description. Although the presence of a Ablack male@ was corroborated, this fact does not tend to show that the tipster had knowledge of concealed criminal activity. *See Florida v. J. L.*, 529 U.S. 266, 272 (2000); *Stewart*, 22 S.W.3d at 648-49.

The officers knew from experience that the Victoria Circle area was an active drug-trafficking center. It was this knowledge, combined with Losoya=s Ahasty@ departure when he noticed them, that the officers cited as giving rise to their suspicion that Losoya was engaged in criminal activity. But Losoya=s conduct was suspicious only if the anonymous tip is deemed credible; that is, only if one assumes that narcotics activities were taking place in apartment D. The State cites no authority holding that a person=s presence in a high-crime area justifies a detention.

Neither the officers= knowledge of the neighborhood=s bad reputation nor the innocuous activities observed by the officers at Victoria Circle added any meaningful corroboration to the undetailed, anonymous tip. We hold that the totality of the circumstances shown by this record did not objectively support a reasonable suspicion that Losoya had been engaged in narcotics or other criminal activity at the apartment, or that he possessed drugs in his pickup truck. The State=s second issue or point of error is overruled.

4

We turn to the State=s other justification for the stop, Losoya=s failure to have the license plate attached to the front bumper of his truck. Officer Drozd testified and the State now argues that this was a violation of transportation code section 502.404(a), which requires that a motor vehicle Adisplay two license plates, at the front and rear of the vehicle.@ Tex. Transp. Code Ann. ' 502.404(a) (West 1999). The code does not define the Afront@ of a vehicle. Because we find the term to be ambiguous, we may resort to extratextual factors to determine the meaning of the statute. *See Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001); *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991); *see also* Tex. Gov=t Code Ann. ' 311.023 (West 1998) (Code Construction Act).

The State argues by reference to section 547.321(b), which requires vehicles to have headlamps Amounted on each side of the front of the vehicle.@ Tex. Transp. Code Ann. ' 547.321(b) (West 1999). The State asserts that this section Adoes not allow for headlamps to be in the passenger compartment or on the dashboard,@ and urges that section 502.404(a) should also be so interpreted. But section 547.321(b) does not support the State=s argument. That statute, like section 502.404(a), merely refers to the Afront@ of the vehicle without further particulars or specifications. It is no less ambiguous in that respect than the statute at issue.

Losoya refers us to the statutory predecessor of section 502.404(a), which provided that it was an offense to operate a motor vehicle Awithout having displayed thereon, *and attached thereto*, two (2) license number plates, one (1) at the front and one (1) at the rear.@ Act of May 23, 1975, 64th Leg., R.S., ch. 621, ' 3, 1975 Tex. Gen. Laws 1919, 1920 (Tex. Rev. Civ. Stat. Ann. art. 6675a-3e, ' 5, since repealed) (emphasis added). The omission of the emphasized phrase from section 502.404(a) supports

5

Losoya=s argument that the present statute does not require the license plate to be physically attached to the vehicle. This, in turn, is some evidence that the license plate need not be attached to the front bumper of the vehicle as the State contends.

The apparent purpose of section 502.404(a) is to facilitate the identification of a motor vehicle by its license plate number whether it is moving toward or away from the viewer. While a place to display the license plate is usually found on the front bumper, the statute does not expressly require the use of this location. The display of the plate in some other place or manner is not inconsistent with the language or purpose of the statute. The officers testified that they could see the license plate in the windshield. We conclude that Losoya=s display of his front license plate in the manner shown here did not violate section 502.404(a) as to give the officers grounds to reasonably suspect a violation of that statute.

The State also argues, as it did below, that the evidence shows a violation of transportation code section 502.409(a)(5) and (7), which at the time in question prohibited the display of a license plate that Ahas letters, numbers, or other identification marks that because of blurring matter are not plainly visible at all times during daylight@ or that Ahas a coating, covering, or protective material that distorts angular visibility or detectability.@ Act of May 30, 1999, 76th Leg., R.S., ch. 1189, ' 17, 1999 Tex. Gen. Laws 4153, 4161 (Tex. Transp. Code Ann. ' 502.409(a)(5), (7), since amended). The State refers to Drozd=s testimony that he could not read Losoya=s license plate because of the glare of the sun on the windshield.

There is no evidence that the letters and numbers on Losoya=s front license plate were blurred, obscured, or otherwise unreadable because any material on either the plate or the windshield. We do not believe that sunlight can reasonably be considered to be Ablurring matter.@ There is also no evidence

6

that the windshield distorted angular visibility or detectability. We find no basis in this record for reasonably suspecting a violation of section 502.409(5) or (7). We overrule the State=s first issue or point of error.

The order granting the motion to suppress is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: February 20, 2004

Do Not Publish