TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-04-00266-CR






David Allen Cronin, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. CR2003-373, HONORABLE JACK H. ROBISON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 We grant the State's motion for rehearing. We withdraw our prior opinion and
judgment issued on September 23, 2005 and substitute the following in its place.

 David Cronin appeals a judgment against him, resulting from a guilty plea, for felony
possession of a controlled substance with intent to deliver in an amount of four grams or more but
less than two hundred grams. See Tex. Health & Safety Code Ann. § 481.112 (West 2003). In his
sole issue, Cronin challenges the district court's denial of his motion to suppress, arguing that the
arresting officer lacked "reasonable suspicion" to stop him. See U.S. Const., amend. IV; Tex. Const.
art. I, § 9; Terry v. Ohio, 392 U.S. 1, 21-22 (1968); United States v. Cortez, 449 U.S. 411, 417
(1981); Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Schwartz v. State, 635 S.W.2d
545, 547 (Tex. Crim. App. 1982). We affirm the judgment of the district court.


BACKGROUND


 On June 25, 2003, at about 1:30 a.m., Officer Gayleen Anderson of the New
Braunfels Police Department was patrolling west on FM 306. On her right was a restaurant, Doug's
Barbeque. The restaurant has a parking lot in front of it, picnic tables on the right side as one faces
it, and a dumpster on the left, all on pavement. Behind the restaurant is an open field. Through the
field, in a semi-circle around the back of the restaurant, runs a gravel driveway, and there is a storage
shed between the gravel driveway and the restaurant. Officer Anderson testified that she was
familiar with the layout of the property and had patrolled the area previously, and she provided a
depiction of the property layout that was admitted into evidence at trial.

 As she approached the intersection with Hunter Road, Officer Anderson saw a white
and red Ford truck with a camper shell slowly driving out of the parking lot from the direction of the
rear of the restaurant, which had been closed for several hours. There were no other vehicles in the
parking lot. The truck appeared to come from behind the building, then turned eastbound on FM
306.

 Officer Anderson had never seen vehicles in the parking lot after the restaurant
closed. She had responded to alarms at a nearby business about five weeks earlier. (1) She was not
aware of any other reports of criminal activity in that area in the meantime. She decided to "follow
the vehicle and stop it because it was just very suspicious why he was there." She explained:


[j]ust the time, the place, it was . . . about 1:30 in the morning. It was dark. The
business had been closed for some time. What were they doing? Jacks had windows
broken twice. I made the reports. And I wanted to find out what exactly the
subject--what the vehicle was doing there, see what their reason for it [was].



She further testified concerning her purpose for the stop: "Mainly I just wanted to find out his
purpose for being in the parking lot, identify who he was, and if everything checked out, he would
be cut loose."

 After Officer Anderson decided to stop the truck, she made a u-turn at the Hunter
Road intersection, caught up to the truck, and pulled it over as it approached the frontage road of
Interstate 35. She had not observed any traffic violations at that point. After stopping the truck, she
approached the truck and asked the driver, Cronin, for his license and proof of insurance. Cronin
told her that his license was expired and that he did not have insurance. She then noticed that his
registration sticker was partially torn. She confirmed that his license had expired and then placed
him under arrest. Officer Bill Spence conducted an inventory search of the truck and discovered
methamphetamine and marijuana.

 Cronin was indicted for possession of a controlled substance with intent to distribute
in an amount of four grams or more but less than two hundred grams. See Health & Safety Code
Ann. § 481.112. Cronin filed a motion to suppress the evidence seized from his truck. During the
suppression hearing, Cronin orally amended his motion to challenge only the articulable reasonable
suspicion for his detention. At the hearing, Anderson, Spence, Cronin and Cronin's girlfriend, Lesli
Byers, testified. Cronin denied driving in the parking lot.

 The district court denied the motion to suppress and entered findings of fact, agreeing
with Officer Anderson's version of the events. (2) It also entered a conclusion of law that "reasonable
suspicion existed to detain [Cronin] when [he] drove his vehicle slowly from behind a business that
had been closed for a period of time in an area in which there had been recent criminal activity." 
Cronin then pleaded guilty pursuant to a plea agreement, and the district court assessed his
punishment at five years' confinement in the penitentiary, probated for five years, and a fine of
$2,500.

DISCUSSION



 In his only issue, Cronin challenges the district court's conclusion that Anderson had
reasonable suspicion to detain him. See Terry, 392 U.S. at 21-22; Garcia, 43 S.W.3d at 530. In
particular, Cronin argues the district court erred in finding that Officer Anderson's testimony
provided specific, articulable facts which gave rise to a reasonable suspicion that he was engaged
in criminal activity. See Terry, 392 U.S. at 21-22; Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim.
App. 1992).

 The appropriate standard for reviewing a trial court's ruling on a motion to suppress
is a bifurcated standard of review, giving almost total deference to a trial court's determination of
historical facts and reviewing de novo the court's application of the law. Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002); Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). The district court is the sole judge of the credibility of the witnesses and the weight to
be given their testimony, and it may choose to believe or disbelieve any or all of a witness's
testimony. Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); Wood v. State, 18 S.W.3d
642, 646 (Tex. Crim. App. 2000); Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993);
Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991).

 We must sustain the district court's ruling if it is reasonably supported by the record
and is correct on any theory of law applicable to the case. State v. Gray, 158 S.W.3d 465, 467 (Tex.
Crim. App. 2005) (quoting State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)); 
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this case, the district court
entered findings of fact and conclusions of law. We give almost total deference to the district court
in reviewing findings of fact because the district court is in a better position to evaluate the
credibility and reliability of witnesses. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
However, we review de novo the district court's application of law to those facts when the
conclusion, such as the existence of reasonable suspicion, does not turn on witness credibility. 
Ornelas v. United States, 517 U.S. 690, 697-98 (1996); Guzman, 955 S.W.2d at 87.

 A warrantless automobile stop is a Fourth Amendment seizure analogous to a
temporary detention, and it must be justified by reasonable suspicion. Berkemer v. McCarty, 468
U.S. 420, 436-37 (1984); Hernandez v. State, 983 S.W.2d 867, 869 (Tex. App.--Austin 1998, pet.
ref'd). The reasonableness of a temporary detention must be examined in terms of the totality of the
circumstances at its inception and will be justified when the detaining officer has specific articulable
facts, which, taken together with rational inferences from those facts, lead her to conclude that the
person detained actually is, has been, or soon will be engaged in criminal activity. Balentine v. State,
71 S.W.3d 763, 768 (Tex. Crim. App. 2002); Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App.
1997); Hernandez, 983 S.W.2d at 869. These facts must amount to more than a mere hunch or
suspicion. Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); Davis v. State, 947
S.W.2d 240, 244 (Tex. Crim. App. 1997); Williams v. State, 621 S.W.2d 609, 612 (Tex. Crim. App.
1981). This standard is an objective one--there need only be an objective basis for the stop. Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). The subjective intent of the officer conducting
the stop is irrelevant. Id. The burden is on the State to elicit testimony of sufficient facts to create
a reasonable suspicion. Id.; see also Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)
(when defendant shows search or seizure occurred without warrant, burden on State to show search
or seizure was reasonable). We look only at those facts known to the officer at the inception of the
stop--a stop or search unlawful at its inception may not be validated by what it turns up. See Wong
Sun v. United States, 371 U.S. 471, 484 (1963).

 Mere presence in a high-crime area is not enough to justify a stop. In Gurrola v.
State, for example, police received a report of a fight in the parking lot of an apartment complex in
a high-crime area. 877 S.W.2d 300, 301 (Tex. Crim. App. 1994). When the investigating officer
arrived, he observed four individuals engaged in what appeared to be an argument. Id. The officer
ordered them to his patrol car where he performed a pat-down search, finding a gun and drugs. Id. 
The court of criminal appeals found the detention unjustified because a defendant's mere presence
in a high-crime area may not serve as the basis for an investigative stop. Id. at 303.

 Likewise, an officer's mere subjective opinion does not rise to the level of articulable
facts. See Ford, 158 S.W.3d at 493. For example, in Viveros, police officers stopped a car for
"suspicious behavior" because it slowed rapidly and continued at a rate of speed less than the posted
speed limit on a public road after being passed by the officers's patrol car. Viveros, 828 S.W.2d at
4. The arresting officer testified that, although the suspicious behavior did not amount to reasonable
suspicion of a criminal violation, he stopped the car because he "just wanted to check him out and
make sure everything was okay." Id. at 5. The court of criminal appeals found the stop was not
supported by sufficient articulable facts giving rise to a reasonable belief that the defendant was
engaged in criminal activity. Id. As another example, an officer's testimony was held to be mere
opinion when he stated that he witnessed a truck following a car on the road and that he believed the
distance between the truck and the car was insufficient and in violation of statute. Id.; see also State
v. Losoya, 128 S.W.3d 413, 415 (Tex. App.--Austin 2004, pet. ref'd) (anonymous tip of "black
male" involved in narcotics activities, combined with officer's knowledge from experience that area
was active drug-trafficking center and defendant's "hasty" departure when he noticed officers, did
not support reasonable suspicion that defendant was engaged in criminal activity).

 Although each case must be decided on its own particular facts, it is useful to review
the decisions of other Texas courts applying the law to similar facts. The court of criminal appeals
has upheld temporary detentions in the context of late hours or a high-crime area, where the State
has identified additional facts that give rise to a reasonable suspicion. In Amorella v. State, police
observed a car parked with its lights on and motor running outside a closed department store in a
high-crime neighborhood at about 1:30 a.m. 554 S.W.2d 700, 701 (Tex. Crim. App. 1977). Two
men were sitting in the vehicle and a third was standing by the open trunk. Id. When the third man
saw the police car, he closed the trunk and got in the car, which began driving away. Id. The officer
pulled over the car to investigate and arrested the defendant, one of the passengers, on an outstanding
warrant. Id. The court of criminal appeals found the presence of the car parked next to a closed
store, with the trunk open and the motor running, late at night, in a high-crime area, along with the
furtive demeanor of the men, (3)
 amounted to circumstances that were "undeniably suspicious," and
held the investigative detention was warranted. Id. at 702.

 In Meeks v. State, police officers patrolling an area where there had been several
recent automobile burglaries saw a man walking towards a car and away from a vacant lot where two
trucks were parked. 653 S.W.2d 6, 8-9 (Tex. Crim. App. 1983). The man appeared to be carrying
a handgun. Id. at 9. The officers stopped the man after he got in the car and began to drive away. 
Id. Upon brief investigation, they discovered stolen property in the car. Id. The court of criminal
appeals held that, because intentionally carrying a handgun was a violation of the penal code, the
officers were justified in making an investigatory detention. Id. at 12; see also Tex. Pen. Code Ann.
§ 46.02 (West 2003); Borner v. State, 521 S.W.2d 852, 854 (Tex. Crim. App. 1975) (initial detention
authorized when officers observed traffic violation).

 In Shaffer v. State, the court of criminal appeals held that there was no reasonable
suspicion to stop a taxi that was driving slowly around an empty commercial district long after
businesses had been closed. 562 S.W.853, 854 (Tex. Crim. App. 1978). The court held that the
taxi's slow speed and the fact that there was no reason for the taxi to be there did not amount to
reasonable suspicion of criminal activity. See id. at 855.

 The Houston court of appeals, fourteenth district, has held that police lacked
reasonable suspicion based on facts similar to the present case. Klare v. State, 76 S.W.3d 68, 77
(Tex. App.--Houston [14th Dist.] 2002, pet. ref'd). In Klare, a police officer spotted a white pickup
truck parked behind a closed strip shopping center, facing a 24-hour convenience store, at around
2:30 a.m. Id. at 71. There had been burglaries in the area in the past. Id. The officer turned around
to investigate because he found the parked vehicle suspicious. Id. The vehicle was gone by the time
the officer arrived at the parking lot, but he soon found the pickup on an adjacent street. Id. At that
time, he pulled the vehicle over and subsequently discovered that the driver was intoxicated. Id. 
Citing a wide variety of cases, the Houston court of appeals discussed the relevance of (1) the
lateness of the hour, (2) the fact that the businesses were closed, and (3) that there had been
burglaries in the area to the determination of reasonable suspicion. The court of appeals held that
the mere presence of the pickup truck in the parking lot, without some additional fact that would
arouse suspicion of criminal activity, fell short of supporting an objectively reasonable suspicion of
criminal activity. Id. at 77.

 Although the Klare case closely resembles the facts before us, we conclude that there
are additional facts here that sufficiently distinguish this case. Doug's Barbeque restaurant had been
closed for several hours. In the two months that she had been patrolling the area, Officer Anderson
had never seen another vehicle in the parking lot after midnight. The parking area in back of the
building was hidden from the street; a storage shed was located there. No vehicle would simply be
driving through from another street because of the field at the back. (4) Had Cronin innocently stopped
to rest or consult a map, he would not have been lurking behind the building. It was late at night,
in a dark area of town where windows of a neighboring business had been broken five weeks earlier. 

 It is important to note that in Klare, the suspicious vehicle was parked in a closed lot,
facing a 24-hour convenience store. See 76 S.W.3d at 71. Klare's vehicle was visible from the street
and it was parked nearby an open business. By contrast, Officer Anderson spotted Cronin's truck
as it emerged from a hidden area behind the closed business; she had to follow Cronin on FM 306
for one to two minutes in order to initiate the stop near an open gas station at the frontage road of
Interstate 35. In light of the recent and unsolved vandalism in the area, it was reasonable for Officer
Anderson to infer from these facts that Cronin had been involved in similar criminal activity. See
Balentine, 71 S.W.3d at 768; Klare, 76 S.W.3d at 77 (totality of circumstances must raise
"reasonable inference of criminal conduct").

 In sum, we hold that (1) the complete absence of any vehicles in the parking lot after
midnight for over two months, (2) the unsolved vandalism of a neighboring business, and (3) the fact
that Cronin's vehicle had come from a concealed area of the parking lot near a storage shed establish
articulable facts, in addition to Cronin's mere presence in the closed parking lot at night, that raise
reasonable suspicion that Cronin was, had been, or would soon be involved in criminal activity. See
Balentine, 71 S.W.3d at 768; Klare, 76 S.W.3d at 77. Accordingly, we overrule Cronin's only issue
and affirm the judgment of conviction.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton: Opinion by Justice B. A. Smith;

 Dissenting Opinion by Chief Justice Law

Affirmed

Filed: December 16, 2005

Do Not Publish

1. Officer Anderson testified that on May 19,


within thirty minutes of each other, we had alarms there [at a business across the
street] in which the front window, the Jack's business, somebody had broken the
window causing the alarm to go off. There was no entry made but about thirty
minutes later the same thing. The alarms went off. Went back over there. 
Somebody had thrown another rock or something into the same window but still
there was no entry.


She also stated that a Pit Stop Texaco had been broken into in 1990, thirteen years before the events
at issue in this appeal.
2. The court made the following findings of fact with regard to Cronin's activities in the
parking lot:


 New Braunfels Police Department Officer Gayle Anderson stopped and detained
the defendant when the defendant, at 1:27 a.m., slowly drove his vehicle in the
parking lot on the side of the building of a business. The vehicle that [the]
defendant was driving came from the direction of the rear of the building. The
business was closed and had been closed for some time.
3. Nervousness or evasive behavior has been found to be a pertinent factor in determining
reasonable suspicion. In Balentine v. State, the officer arrived on the scene of a shots-fired call. 71
S.W.3d 763, 769 (Tex. Crim. App. 2002). He observed the defendant walking across the street
nearby the complainant's residence. Id. It was approximately 2:30 in the morning in what the
officer described as a residential, low-traffic area. Id. The defendant appeared nervous and was
walking briskly away from the reported direction of the gunfire, while constantly looking back over
his shoulder in the officer's direction. The officer's detention of the defendant was found to have
been justified. Id.; see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

4. The field is bounded by trees and a ditch and would not be accessible by car.