NO. 07-08-0335-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 10, 2009
______________________________

TAWIN SPENCE, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414,629; HON. JIM BOB DARNELL, PRESIDING
_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
Â Â Â Â Â Â Â Â Â Â Tawin Spence (appellant) appeals his conviction for possession of a controlled
substance. In a single issue, he contends that the trial court erred by failing to instruct the
jury that if it found the police did not have reasonable suspicion to stop him, then it could
disregard the evidence discovered during the stop. We affirm.
Â 
Â 
Background
Â Â Â Â Â Â Â Â Â Â Lubbock police officer Shane Bledsoe was watching a known âcrack houseâ around
midnight when he observed a Chevy Impala parked in the driveway of the residence. 
Eventually, the car left and drove past him. When it did, the officer saw no front license
plate on the vehicle. This induced him to initiate a traffic stop.
Â Â Â Â Â Â Â Â Â Â According to Bledsoe, appellant allegedly stated that he knew the reason for the
stop because he had already been cited for lacking a front plate. Thereafter, Bledsoe
discovered that appellant had no driverâs license either. This led to the officer frisking
appellant and discovering drugs and $1,400.00 on his person. 
Â Â Â Â Â Â Â Â Â Â The officer further detained appellant by escorting him to the squad car. As he did
so, he saw a passenger in appellantâs vehicle discard a baggie containing what was
eventually identified as crack cocaine. Eventually, appellant was arrested and charged
with the crime mentioned above.
Â Â Â Â Â Â Â Â Â Â At trial, the officer testified that he pulled appellant over for the license plate violation
and for illegally blocking the sidewalk at the residence. On cross-examination, Bledsoe
agreed that he did not issue appellant a ticket for blocking the sidewalk and that he saw
a license plate laying on appellantâs dashboard as he approached the vehicle. 
Â Â Â Â Â Â Â Â Â Â In turn, appellant testified at trial that he did not block the sidewalk. And, while he
acknowledged that the license plate was on his dash, he asserted that it was âall the way
up in front of the front windshieldâ and quite visible. So too did he request, at the close of
evidence, that the trial court âinstruct the jury as to the law of the license plateâ and that
once the police officer observed the license plate in the front windshield, the officer could
no longer detain him without other legitimate reason. That the jury be given an article
38.23 instruction encompassing the purported sidewalk violation also was solicited.


 Both
instructions, however, were denied. 
Law and Analysis
Â Â Â Â Â Â Â Â Â Â Simply put, the issue before us involves whether questions of fact existed warranting
the instructions sought. Both parties agreed that without the presence of such factual
questions, neither instruction would be appropriate. Appellant also conceded that if a
factual dispute existed with regard to only one of the two bases mentioned by the officer
for stopping the car, then the instructions sought were unnecessary. With that said, we
first consider the allegation implicating the front license plate.
Â Â Â Â Â Â Â Â Â Â Admittedly, the record contains conflicting evidence on whether the license plate
could readily be seen. Yet, all agree on the plateâs location, on the dashboard of the
vehicle behind the windshield. A question arises, however, as to whether that was a
permissible location; if it was, then it could not be used to prolong the stop. To answer
that, we look to the Texas Transportation Code. 
Â Â Â Â Â Â Â Â Â Â Section 502.404(a) of the Transportation Code states that license plates must be
displayed on the âfrontâ and ârearâ of a vehicle. Tex. Transp. Code Ann. Â§502.404(a)
(Vernon Supp. 2008). If locating the plate behind the windshield, like appellant did here,
comports with that mandate, then the officer could not further detain appellant without other
legitimate reason once he saw the plate. And, to sway us to that conclusion, appellant
cites us to the opinion of State v. Losoya,128 S.W.3d 413 (Tex. App.âAustin 2004, pet.
refâd). In Losoya, the court held that displaying a license plate on a carâs dashboard
comported with Â§502.404 if the plate could otherwise be seen from the front of the car. Id.
at 416. It so held because the panel deemed the word âfrontâ ambiguous, sought to
discover the legislative purpose underlying the statute, and, upon discovering that, applied
the alleged purpose to the circumstances before it. Furthermore, according to the Losoya
panel, that purpose was simply to make sure that one could see the plate. Id. We find that
analysis and conclusion problematic for several reasons. Â 
Â Â Â Â Â Â Â Â Â Â First, the Losoya court failed to explain why it deemed âfrontâ ambiguous. It cited
no contradictory definitions of the word. Nor did it discuss any factual scenarios in which
the word could be accorded two reasonable yet conflicting interpretations. See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 465 (Tex. 1998) (holding that a
term is ambiguous if it is susceptible to two reasonable but conflicting interpretations). 
Â Â Â Â Â Â Â Â Â Â Second, we cannot but help recall various phrases encountered in everyday life that
incorporate the word âfrontâ and help illustrate what it means in common parlance. For
instance, the terms âfront lineâ or âbattle front,â âgo to the front of the line,â âfront and back,â
âfront and center,â âstorm front,â âfront page,â âfront seat,â and âfront doorâ are of such a
nature. Each connotes the idea of something preceding something else, or of the
beginning of an object. Indeed, if told to turn to the front page of a newspaper and read
article X, a reasonable person would undoubtedly go to the first page or beginning of the
paper to find it. Similarly, a reasonable person hearing a knock at the âfront doorâ of his
house would most likely go to the front door, as opposed to the back or side, in response. 
So too can it be said that a reasonable person who paid to have the âfront seatâ of his car
recovered would most likely not be satisfied if the upholsterer covered the rear seat
instead. And, who can forget those scenes from âHoganâs Heroesâ where Colonel Klink
was repeatedly threatened with and fearful of being sent to the âRussian frontâ; that threat
would not have had the same impact if âfrontâ actually meant something other than the
beginning of the battlefield whereat the two sides are actually engaging in war. It is these
common usages of the word that help define what it means.
Â Â Â Â Â Â Â Â Â Â Admittedly, there may be situations where a common word may develop alternate
meanings in specific professions or fields. Or, it could be that those using such words
could assign new meanings to words as part of some fad or blossoming dialect. But, we
neither have nor are given by the Losoya panel any reason to believe that the legislature
sought to use any specialized meaning or adopt some slang when including âfrontâ in Â§
502.404(a). And, from the aforementioned examples of how the word is used in common
parlance coupled with the area where millions of people actually locate their license plate
on their vehicle, we cannot but construe âfrontâ to mean the area where the car begins or
the foremost part of the vehicle.


 See Blacks Law Dictionary 668 (6th ed. 1990) (defining
âfrontâ as â[f]orepart, as opposed to the back or rearâ); Dictionary.com, http://
dictionary.reference.com (last visited Aug. 3, 2009) (defining âfrontâ as the âforemost part
or surface of anythingâ and âa place or position directly before anythingâ); Merriam-Webster, http://meriam-webster.com/dictionary (last visited Aug. 3, 2009) (defining âfrontâ
as âthe forward part or surfaceâ and as âthe foremost part of a thingâ). So, given our
obligation to generally accord words their ordinary meaning, see Fitzgerald v. Advanced
Spine Fixation Systems, Inc., 996 S.W.2d 864, 865 (Tex. 1999) quoting Liberty Mut. Ins.
Co. v. Garrison Contractors, 966 S.W.2d 482, 484 (Tex. 1998), we hold that one complies
with Â§502.404 of the Transportation Code when the license is affixed somewhere in the
foremost or beginning area of the car. 
Â Â Â Â Â Â Â Â Â Â Third, as recognized by the Losoya panel, the âapparent purpose of Section
502.404(a) [was] to facilitate the identification of a motor vehicle . . . .â State v. Losoya, 
128 S.W.3d at 416. That purpose, the court continued, was satisfied if the officer could
see the plate. Id. (stating that Losoya complied with the statute because the âofficers
testified that they could see the license plate in the windshieldâ). Yet, if the test is whether
the officers can see the plate, then that frees the vehicleâs owner to place it most anywhere
so long as it can somehow be seen. Not only could it be attached to the front bumper but
also a door, hood, rear spoiler, window, fender, or any other location of the car as long as
the police could see it. And, should the owner pursue such options, then law enforcement
officials attempting to identify the car would no longer be able to simply focus upon the
front of the car. Instead, they would have to spend more time looking at all possible places
at which the plate could be. This, in turn, would most likely result in more stops for it is
much harder to focus on several areas (as opposed to one) when a car drives past at
traveling speeds, as exemplified here.


 So, the Losoya interpretation of âfrontâ actually
impedes what it considered to be the purpose underlying the statute. 
Â Â Â Â Â Â Â Â Â Â Finally, we also note that by appending the preposition âatâ before the phrase âfront
and rear,â the legislature effectively described a location as opposed to a direction or ability
to sense. âAt the frontâ differs from âfacing the front.â So too does it differ from merely
being able to see it from the front or from outside the car. The latter two concepts involve
oneâs ability to perceive in general while âat the frontâ denotes a specific area. What this
means is that Losoya implicitly modified the obligation imposed by Â§502.404(a) from one
encompassing location to one of involving perception. If the latter was all that the
legislature cared about, it could have written the statute to clearly indicate that the plate
had âonly to be seenâ by passersby; because the legislature did not so write the statute,
we will heed the way it did write it. Â 
Â Â Â Â Â Â Â Â Â Â Having found deficiencies in Losoya and having concluded that one satisfies Â§
502.404(a) by affixing the license in an area where the car begins, i.e. the foremost area
of the vehicle, we conclude that placing it behind a windshield is not enough, if the
windshield is located somewhere other than the front of the car. And, because the
windshield on appellantâs vehicle was not so located, he did not comply with the statute. 
Consequently, the officer was not required to find some other reason to detain him after
discovering the plateâs location. Nor was the trial court obligated to instruct the jury
otherwise.
Â Â Â Â Â Â Â Â Â Â Accordingly, we affirm the judgment of the trial court.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice


Campbell, J., concurs in result.


Publish.




fy;mso-pagination:widow-orphan'>
Â 

AT AMARILLO

Â 

PANEL A

Â 

MAY 23, 2011

______________________________

Â 

Â 

KEVIN RAMZY, APPELLANT

Â 

V.

Â 

THE STATE OF TEXAS, APPELLEE

Â 

Â 

_________________________________

Â 

FROM THE 181ST DISTRICT COURT OF POTTER
COUNTY;

Â 

NO. 33,461-B; HONORABLE JOHN B. BOARD, JUDGE

Â 

_______________________________

Â 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

   On February 22, 2011,
the trial court signed an Order Denying
Defendant's Motion for Appointment of Counsel for DNA Testing.Â  No motion for new trial was filed, and on May
5, 2011, Appellant, Kevin Ramzy, filed a pro se
notice of appeal requesting review of the trial court's order.

Â Â Â Â Â Â Â Â Â Â Â  A timely and proper
notice of appeal invokes this Court=s jurisdiction.Â  State v. Riewe, 13 S.W.3d 408, 410
(Tex.Crim.App. 2000).Â  When no
motion for new trial is filed, a notice of appeal must be filed within thirty
days after the trial court enters an appealable order. Â Tex. R. App. P. 26.2(a)(1).Â  The deadline may be extended if, within
fifteen days, the party files the notice with the trial court clerk and also
files a motion for extension of time in compliance with Rule 10.5(b) of the
Texas Rules of Appellate Procedure in this Court.Â  See Tex.
R. App. P. 26.3.Â  This Court has no
authority to invoke Rule 2 to enlarge the time in which to file a notice of
appeal.Â  Tex. R. App.
P. 2; Slaton v. State, 981 S.W.2d 208, 210 (Tex.Crim.App. 1998).

Â Â Â Â Â Â Â Â Â Â Â  The order Appellant
seeks to appeal was entered on February 22, 2011.Â  Thus, the deadline in which to file a notice
of appeal was March 24, 2011.Â  Accordingly,
the notice of appeal was not timely filed.Â 
See Swearingen v. State, 189
S.W.3d 779, 781 (Tex.Crim.App. 2006).Â  The
appeal is dismissed for want of jurisdiction.[1]Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Patrick
A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â  Justice

Â 

Do not publish.

Â 

Â 











[1]Even
if Appellant had timely filed his notice of appeal, dismissal of the appeal
would be the appropriate disposition.Â  See Gutierrez v. State, 307 S.W.3d 318,
323 (Tex.Crim.App. 2010) (holding
that the decision to deny appointed counsel to pursue DNA testing under chapter
64 of the Texas Code of Criminal Procedure is not an appealable order).