NO. 07-08-0335-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 10, 2009
_____

TAWIN SPENCE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-414,629; HON. JIM BOB DARNELL, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Tawin Spence (appellant) appeals his conviction for possession of a controlled substance. In a single issue, he contends that the trial court erred by failing to instruct the jury that if it found the police did not have reasonable suspicion to stop him, then it could disregard the evidence discovered during the stop. We affirm.

### *Background*

Lubbock police officer Shane Bledsoe was watching a known "crack house" around midnight when he observed a Chevy Impala parked in the driveway of the residence. Eventually, the car left and drove past him. When it did, the officer saw no front license plate on the vehicle. This induced him to initiate a traffic stop.

According to Bledsoe, appellant allegedly stated that he knew the reason for the stop because he had already been cited for lacking a front plate. Thereafter, Bledsoe discovered that appellant had no driver's license either. This led to the officer frisking appellant and discovering drugs and $1,400.00 on his person.

The officer further detained appellant by escorting him to the squad car. As he did so, he saw a passenger in appellant's vehicle discard a baggie containing what was eventually identified as crack cocaine. Eventually, appellant was arrested and charged with the crime mentioned above.

At trial, the officer testified that he pulled appellant over for the license plate violation and for illegally blocking the sidewalk at the residence. On cross-examination, Bledsoe agreed that he did not issue appellant a ticket for blocking the sidewalk and that he saw a license plate laying on appellant's dashboard as he approached the vehicle.

In turn, appellant testified at trial that he did not block the sidewalk. And, while he acknowledged that the license plate was on his dash, he asserted that it was "all the way up in front of the front windshield" and quite visible. So too did he request, at the close of evidence, that the trial court "instruct the jury as to the law of the license plate" and that once the police officer observed the license plate in the front windshield, the officer could no longer detain him without other legitimate reason. That the jury be given an article

38.23 instruction encompassing the purported sidewalk violation also was solicited.[1]  Both instructions, however, were denied.

## Law and Analysis

Simply put, the issue before us involves whether questions of fact existed warranting the instructions sought.  Both parties agreed that without the presence of such factual questions, neither instruction would be appropriate.  Appellant also conceded that if a factual dispute existed with regard to only one of the two bases mentioned by the officer for stopping the car, then the instructions sought were unnecessary.  With that said, we first consider the allegation implicating the front license plate.

Admittedly, the record contains conflicting evidence on whether the license plate could readily be seen.  Yet, all agree on the plate's location, on the dashboard of the vehicle behind the windshield.  A question arises, however, as to whether that was a permissible location; if it was, then it could not be used to prolong the stop.  To answer that, we look to the Texas Transportation Code.

Section 502.404(a) of the Transportation Code states that license plates must be displayed on the "front" and "rear" of a vehicle.  TEX. TRANSP. CODE ANN. §502.404(a) (Vernon Supp. 2008).  If locating the plate behind the windshield, like appellant did here, comports with that mandate, then the officer could not further detain appellant without other legitimate reason once he saw the plate.  And, to sway us to that conclusion, appellant cites us to the opinion of *State v. Losoya,*128 S.W.3d 413 (Tex. App.–Austin 2004, pet.

---

[1]Article 38.23 of the Texas Code of Criminal Procedure states that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case" and that in "any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."  TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005).

ref'd). In *Losoya,* the court held that displaying a license plate on a car's dashboard comported with §502.404 if the plate could otherwise be seen from the front of the car. *Id.* at 416. It so held because the panel deemed the word "front" ambiguous, sought to discover the legislative purpose underlying the statute, and, upon discovering that, applied the alleged purpose to the circumstances before it. Furthermore, according to the *Losoya* panel, that purpose was simply to make sure that one could see the plate. *Id.* We find that analysis and conclusion problematic for several reasons.

First, the *Losoya* court failed to explain why it deemed "front" ambiguous. It cited no contradictory definitions of the word. Nor did it discuss any factual scenarios in which the word could be accorded two reasonable yet conflicting interpretations. *See Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998) (holding that a term is ambiguous if it is susceptible to two reasonable but conflicting interpretations).

Second, we cannot but help recall various phrases encountered in everyday life that incorporate the word "front" and help illustrate what it means in common parlance. For instance, the terms "front line" or "battle front," "go to the front of the line," "front and back," "front and center," "storm front," "front page," "front seat," and "front door" are of such a nature. Each connotes the idea of something preceding something else, or of the beginning of an object. Indeed, if told to turn to the front page of a newspaper and read article X, a reasonable person would undoubtedly go to the first page or beginning of the paper to find it. Similarly, a reasonable person hearing a knock at the "front door" of his house would most likely go to the front door, as opposed to the back or side, in response. So too can it be said that a reasonable person who paid to have the "front seat" of his car recovered would most likely not be satisfied if the upholsterer covered the rear seat

instead. And, who can forget those scenes from "Hogan's Heroes" where Colonel Klink was repeatedly threatened with and fearful of being sent to the "Russian front"; that threat would not have had the same impact if "front" actually meant something other than the beginning of the battlefield whereat the two sides are actually engaging in war. It is these common usages of the word that help define what it means.

Admittedly, there may be situations where a common word may develop alternate meanings in specific professions or fields. Or, it could be that those using such words could assign new meanings to words as part of some fad or blossoming dialect. But, we neither have nor are given by the *Losoya* panel any reason to believe that the legislature sought to use any specialized meaning or adopt some slang when including "front" in § 502.404(a). And, from the aforementioned examples of how the word is used in common parlance coupled with the area where millions of people actually locate their license plate on their vehicle, we cannot but construe "front" to mean the area where the car begins or the foremost part of the vehicle.[2] See BLACKS LAW DICTIONARY 668 (6th ed. 1990) (defining "front" as "[f]orepart, as opposed to the back or rear"); Dictionary.com, http:// dictionary.reference.com (last visited Aug. 3, 2009) (defining "front" as the "foremost part or surface of anything" and "a place or position directly before anything"); Merriam-Webster, http://meriam-webster.com/dictionary (last visited Aug. 3, 2009) (defining "front" as "the forward part or surface" and as "the foremost part of a thing"). So, given our obligation to generally accord words their ordinary meaning, *see Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) *quoting Liberty Mut. Ins. Co. v. Garrison Contractors*, 966 S.W.2d 482, 484 (Tex. 1998), we hold that one complies

[2]This is not to say that the plate may only be located on the bumper. Nothing in the statute requires that; again, it need only be on the "front" of the car. Nor do we care to read into the statute what the legislature left out.

with §502.404 of the Transportation Code when the license is affixed somewhere in the foremost or beginning area of the car.

Third, as recognized by the *Losoya* panel, the "apparent purpose of Section 502.404(a) [was] to facilitate the identification of a motor vehicle . . . ." *State v. Losoya,* 128 S.W.3d at 416. That purpose, the court continued, was satisfied if the officer could see the plate. *Id.* (stating that Losoya complied with the statute because the "officers testified that they could see the license plate in the windshield"). Yet, if the test is whether the officers can see the plate, then that frees the vehicle's owner to place it most anywhere so long as it can somehow be seen. Not only could it be attached to the front bumper but also a door, hood, rear spoiler, window, fender, or any other location of the car as long as the police could see it. And, should the owner pursue such options, then law enforcement officials attempting to identify the car would no longer be able to simply focus upon the front of the car. Instead, they would have to spend more time looking at all possible places at which the plate could be. This, in turn, would most likely result in more stops for it is much harder to focus on several areas (as opposed to one) when a car drives past at traveling speeds, as exemplified here.[3] So, the *Losoya* interpretation of "front" actually impedes what it considered to be the purpose underlying the statute.

Finally, we also note that by appending the preposition "at" before the phrase "front and rear," the legislature effectively described a location as opposed to a direction or ability to sense. "At the front" differs from "facing the front." So too does it differ from merely being able to see it from the front or from outside the car. The latter two concepts involve

---

[3]Indeed, as evinced from the video of appellant's vehicle received in evidence here, the lights of the car obstructed one's ability to see anything on the dashboard; yet, the area around the front bumper remained readily visible even at night.

one's ability to perceive in general while "at the front" denotes a specific area. What this means is that *Losoya* implicitly modified the obligation imposed by §502.404(a) from one encompassing location to one of involving perception. If the latter was all that the legislature cared about, it could have written the statute to clearly indicate that the plate had "only to be seen" by passersby; because the legislature did not so write the statute, we will heed the way it did write it.

Having found deficiencies in *Losoya* and having concluded that one satisfies § 502.404(a) by affixing the license in an area where the car begins, *i.e.* the foremost area of the vehicle, we conclude that placing it behind a windshield is not enough, if the windshield is located somewhere other than the front of the car. And, because the windshield on appellant's vehicle was not so located, he did not comply with the statute. Consequently, the officer was not required to find some other reason to detain him after discovering the plate's location. Nor was the trial court obligated to instruct the jury otherwise.

Accordingly, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice


Campbell, J., concurs in result.


Publish.